UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EMPOWER OVERSIGHT )
WHISTLEBLOWERS & RESEARCH, )
601 King Street, Suite 200 )
Alexandria, VA 22313-3151 )
)
         Plaintiff, )
)   Case No. _____
v. )
)
U.S. DEPARTMENT OF JUSTICE, )
950 Pennsylvania Avenue NW )
Washington, DC 20530-0001, )
)
         Defendant. )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Plaintiff Empower Oversight Whistleblowers & Research (hereinafter "Empower Oversight") brings this action against Defendant U.S. Department of Justice ("DOJ") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 (the "FOIA"), including obtaining access to records maintained by DOJ.

2.     The records at issue are the subject of two related FOIA Requests, dated July 12, 2021 and August 19, 2021, respectively (collectively, the "Requests"). The Requests concern questions of objectivity and impartiality concerning Special Counsel John Durham's investigation, including as to individual personnel and the DOJ's monetary commitment to continuing Special Counsel Durham's investigation.

### July 12, 2021 FOIA Request

3.     The July 12, 2021 FOIA Request relates to the hiring of Ms. Susan Hennessey at the DOJ's National Security Division. Among other things, the National Security Division

"supervises the investigation and prosecution of cases affecting or relating to national security, including any cases involving foreign interference in elections or violent extremist threats to elections." *See, e.g.*, Press Release, *Justice Department Releases Information on Election Day Efforts to Protect the Right to Vote and Prosecute Ballot Fraud*, U.S. DEP'T OF JUST. (Oct. 29, 2020), *available at* https://www.justice.gov/opa/pr/justice-department-releases-information-election-day-efforts-protect-right-vote-and-prosecu-1.

4.      Before joining the Biden Administration, Ms. Hennessey was employed as a Senior Fellow in Governance Studies at The Brookings Institution and Executive Editor of the Brookings-affiliated Lawfare blog. *See Susan Hennessey*, BROOKINGS INST. (last accessed Feb. 17, 2022), *available at* https://www.brookings.edu/?author_name=susan-hennessey; *Homepage*, LAWFARE (last accessed Feb. 17, 2022), *available at* https://www.lawfareblog.com/ (stating that the blog is "published by the Lawfare Institution in cooperation with Brookings"). She also worked as a CNN legal and national security analyst. *See Susan Hennessey*, CNN (last accessed Feb. 17, 2022), *available at* https://www.cnn.com/search?q=susan+hennessey (search for "Susan Hennessey" returning numerous articles referencing her contributor title).

5.      The topic of "foreign interference in elections"—in particular, Russian interference—dominated headlines and political discussion in the aftermath of the 2016 president election. The controversy concerning so-called "Russian collusion" and related matters, which spawned numerous investigations by the Department of Justice and Congress, continues to the present day. *See, e.g.*, Brooke Singman et al., *Clinton campaign lawyer Sussman files motion to dismiss Durham prosecution*, FOX NEWS (Feb. 17, 2022), *available at* https://www.foxnews.com/politics/clinton-campaign-lawyer-sussmann-durham-probe-motion-to-dismiss; *Trump-Russia collusion*, THE HILL (last accessed Feb. 14, 2022), *available at*

2

https://thehill.com/social-tags/russian-collusion (compiling "all latest Trump-Russia collusion News"); WASH. POST (last accessed Feb. 14, 2022), *available at* https://washingtonpost.com/search (showing 5,429 search results for "Russian collusion").

6.    The July 12, 2021 Request relates in particular to the ongoing work of Special Counsel John Durham.  On May 13, 2019, former Attorney General Barr assigned then-United States Attorney John Durham to conduct a preliminary review into certain matters concerning the 2016 presidential election campaigns, which developed into a criminal investigation.  *See* Order No. 4878-2020, *Appointment of Special Counsel to Investigate Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns*, OFFICE OF THE ATT'Y GEN. (Oct. 19, 2020); *see also DOJ Appointment Letter for Attorney General Durham Signed by Attorney General Barr*, AM. OVERSIGHT (Aug. 19, 2020), *available at* https://www.americanoversight.org/document/doj-appointment-letter-for-attorney-general-durham-signed-by-attorney-general-barr (containing a Feb. 6, 2020 letter from former Attorney General Barr to Durham, appointing him as a Special Attorney to the Attorney General in advance of commencement of criminal proceedings in federal court).

7.    Due to the "extraordinary circumstances" relating to those matters, on October 19, 2020, Barr appointed Durham to serve as Special Counsel, authorizing Durham to investigate whether any violations of law occurred "in connection with the intelligence, counter-intelligence, or law-enforcement activities directed at the 2016 presidential campaigns, individuals associated with those campaigns, and individuals associated with the administration of President Donald J. Trump, including but not limited to [the federal investigation of Trump campaign associates known as] Crossfire Hurricane and the investigation of Special Counsel Robert S. Mueller, III." *See supra* Order No. 4878-2020.

8.     Special Counsel Durham's ongoing investigation has thus far resulted in two indictments, including of Russian national Igor Danchenko.  *See Special Counsel's Office*, U.S. DEP'T OF JUST. (last accessed Feb. 17, 2022), *available at* https://www.justice.gov/sco-durham (linking to press releases for both indictments); Press Release, *Russian National Indicted for Making False Statements to the FBI*, U.S. DEP'T OF JUST. (Nov. 4, 2021), *available at* https://www.justice.gov/sco/pr/russian-national-indicted-making-false-statements-fbi.

Danchenko was indicted and arrested for making false statements in connection with his role in compiling a document, published in early January 2017 and widely known as the "Steele dossier," which contained "salacious allegations about [then-President-elect] Trump and his supposed ties to Russia." *See* Marshall Cohen, *The Steele dossier: A reckoning*, CNN (Nov. 18, 2021), *available at* https://www.cnn.com/2021/11/18/politics/steele-dossier-reckoning/index.html; *see also* Luke Harding, *Russian source for Steele's Trump dossier arrested by U.S. authorities*, THE GUARDIAN (Nov. 4, 2021), *available at* https://www.theguardian.com/us-news/2021/nov/04/trump-russia-steele-dossier-igor-danchenko.

9.     Mr. Danchenko was previously employed by the Brookings Institution, which received a subpoena from Special Counsel Durham in December 2020.  *See, e.g.*, Margot Cleveland, *Why Special Counsel John Durham Subpoenaed The Brookings Institution*, THE FEDERALIST (Nov. 12, 2021), *available at* https://thefederalist.com/2021/11/12/why-special-counsel-john-durham-is-investigating-the-brookings-institution/; Charlie Savage & Adam Goldman, *Subpoenaing the Brookings Institution, Durham Focuses on Trump-Russia Dossier*, N.Y. TIMES (updated Nov. 4, 2021), *available at* https://www.nytimes.com/2021/04/12/us/politics/durham-investigation-brookings-

institution.html.  Mr. Danchenko is one of many links between Brookings and matters potentially under investigation by Special Counsel Durham.

10.    In each of her roles—including on behalf of Brookings—Ms. Hennessey was a prolific public commenter regarding matters within the purview of Special Counsel Durham.  She opined publicly on the Steele dossier, as well as on both former Special Counsel Mueller's investigation and Special Counsel Durham's ongoing investigation.  *See, e.g.*, Jordan Boyd, *GOP Senators Press DOJ on Russia Hoaxer Susan Hennessey's Role in Durham Probe*, THE FEDERALIST (June 30, 2021), *available at* https://thefederalist.com/2021/06/30/gop-senators-press-doj-on-russia-hoaxer-susan-hennesseys-role-in-durham-probe/ (Hennessey citing to "growing signs that there are serious problems with the IG report" concerning the FBI's Russia investigation, and "questions" as to whether the report is a "political document driven by Barr's conspiracy theories"); *A Dangerous Pick at Justice*, WALL ST. J. (May 12, 2021) (noting that Ms. Hennnessey tweeted after the 2020 election that Durham's work was "partisan silliness"); Brian Stelter, *How a single poll question illustrates America's divide over Trump and Russia*, CNN (Feb. 14, 2019), *available at* https://lite.cnn.com/en/article/h_a255d33f90f7d2efa478ff8c35127301; Quina Jurecic, *Devin Nunes's Mystery Memo: Repeating the Cycle of Distraction*, LAWFARE (Jan. 20, 2018), *available at* https://www.lawfareblog.com/devin-nuness-mystery-memo-repeating-cycle-distraction (Hennessey predicting a Congressional memorandum relating to the Steele Dossier "will be largely incoherent"); Susan Hennessey & Benjamin Wittes, *Robert Mueller's show of strength: A quick and dirty analysis*, BROOKINGS INST. (Oct. 30, 2017), *available at* https://www.brookings.edu/blog/fixgov/2017/10/30/robert-muellers-show-of-strength-a-quick-and-dirty-analysis/ (referencing former Special Counsel Mueller's initial indictments as a "remarkable show of strength" and former President Trump's tweets as to the same as "antics").

11.    However, not all of Ms. Hennessey's prior commentary remains available to the public. Many comments by Ms. Hennessey on matters within the purview of Special Counsel Durham were reportedly deleted *en masse* between November 2020 and May 2021, with her Twitter account dropping by approximately 39,000 tweets. *See, e.g.*, Houston Keene, *New Biden DOJ staffer deleted over 39K tweets, including Russia collusion accusations*, FOX NEWS (May 10, 2021), *available at* https://www.foxnews.com/politics/biden-doj-susan-hennessey-deleted-tweets-russia-collusion.

12.    On May 10, 2021, Ms. Hennessey announced she was joining DOJ's National Security Division as senior counsel. *See* Harper Neidig, *CNN legal analyst joins DOJ's national security division*, THE HILL (May 10, 2021), *available at* https://thehill.com/policy/national-security/552649-cnn-legal-analyst-joins-dojs-national-security-division.

13.    On June 29, 2021, Senators Charles Grassley and Ron Johnson wrote to Attorney General Merrick Garland, raising concerns about Ms. Hennessey's role in the DOJ's National Security Division and potential impact on matters such as the Durham inquiry. Letter from Sens. Grassley & Johnson to Att'y Gen. Garland, June 29, 2021, *available at* https://www.judiciary.senate.gov/imo/media/doc/grassley_johnson_to_justice_dept.hennesseyconflicts.pdf. The senators emphasized Ms. Hennessey's history of expressing strongly-held views on matters within the National Security Division's purview, and questioned whether Ms. Hennessey would approach her official duties at the agency tasked with overseeing election interference in an objective and impartial matter. *See supra* ¶ 3.

14.    Concerns regarding objectivity and impartiality based on public commentary are hardly novel. For example, Ms. Hennessey herself has raised such questions in the context of

former Attorney General Barr.  In assessing the then-Attorney General remarks at a Constitution

Day speech at Hillsdale College, Ms. Hennessey and her co-author stated:

> "The **concern of Barr's critics—ourselves included**—is that Barr has exercised his
> undoubted supervisory powers in an **improper, even corrupt, fashion**, and that he has
> done so in a **sustained effort to undermine** the results of Robert Mueller's investigation.
> **The criticism is that he has exercised those powers to frustrate legitimate
> investigations and prosecutions** . . . to protect individuals close to the president who
> appointed him **and to serve Trump's personal and political interests** in attacking
> investigations of himself."

Susan Hennessey & Benjamin Wittes, *What Bill Barr Said and What it Means*, Lawfare (Sept.

17, 2020), https://www.lawfareblog.com/what-bill-barr-said-and-what-it-means  (emphasis

added).

15.     Similarly here, in light of Ms. Hennessey's prejudicial comments regarding matters

under investigation by DOJ, Empower Oversight notes the serious questions—highlighted by

concerned Senators, and accentuated by the deletion of thousands of prior statements on Twitter—

concerning the ability of DOJ to appear objective and impartial in light of Ms. Hennessey's

potential exercise of official duties related to Special Counsel Durham's investigation.

16.     There is an acute public interest in ensuring the continued independence of Special

Counsel Durham's ongoing investigation—and therefore in gaining access to documents relating

to the DOJ's hiring of Ms. Hennessey, and what steps, if any, the Department has taken to mitigate

the appearance that Ms. Hennessey's biases and/or conflicts could interfere with or prejudice

Special Counsel Durham's important work.   Accordingly, Empower Oversight filed the FOIA

Request described herein.

## August 19, 2021 FOIA Request

17.     The records at issue in the August 19, 2021 Request relate to Attorney General Garland's decisionmaking concerning Special Counsel Durham's budget.

18.     As former Attorney General Barr explained in a letter to the U.S. House and Senate Judiciary Committees, the purpose of the Special Counsel appointment was "to provide [Durham] and his team with the assurance that they could complete their work, without regard to the outcome of the election."  Letter from Att'y Gen. Barr to Chairman Graham et al., Dec. 1, 2020, *available at* https://www.judiciary.senate.gov/imo/media/doc/Letter%20re%20Durham%20to%20Hill.pdf.

19.     The outcome of the Durham investigation is of vital importance to the public.  For example, one former FBI attorney has been convicted and the Trump dossier source was recently charged with lying to the FBI.  Press Release, *FBI Attorney Admits Altering Email Used for FISA Application During "Crossfire Hurricane" Investigation*, U.S. DEP'T OF JUST. (Aug. 19, 2020), https://www.justice.gov/usao-ct/pr/fbi-attorney-admits-altering-email-used-fisa-application-during-crossfire-hurricane; Press Release, *Russian National Indicted for Making False Statement to the FBI*, U.S. DEP'T OF JUST., (Nov. 4, 2021), https://www.justice.gov/sco/pr/russian-national-indicted-making-false-statements-fbi.

20.     As another recent example, in late 2021, a grand jury indicted Michael Sussman, a lawyer representing both a U.S. technology executive and the Clinton campaign, for making false statements to the FBI in 2016.  *See* Press Release, *Grand Jury Indicts D.C. Attorney with Making False Statements to the FBI in 2016 Regarding Alleged Communications Between Trump Organization and Russian Bank*, U.S. DEP'T OF JUST. (Sept. 16, 2021), https://www.justice.gov/sco/pr/grand-jury-indicts-dc-attorney-making-false-statements-fbi-2016-regarding-alleged.  Litigation continues to develop in that matter, as highlighted in court filings

and media reports just this month. *See, e.g.*, Harper Neidig, *Durham alleges cyber analysts 'exploited' access to Trump White House Server*, THE HILL (Feb. 14, 2022), *available at* https://thehill.com/regulation/court-battles/594126-durham-alleges-cyber-analysts-exploited-access-to-trump-white-house.

21.    The Special Counsel regulations provide that the Special Counsel shall exercise "the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney" and subject to limited exceptions, "shall determine whether and to what extent to inform or consult with the Attorney General" about the conduct of his or her investigative responsibilities.  28 C.F.R. § 600.6.

22.    However, despite this independent authority, the same set of regulations provide that "90 days before the beginning of each fiscal year, the Special Counsel shall report to the Attorney General the status of the investigation, and provide a budget request for the following year. *The Attorney General shall determine whether the investigation should continue and, if so, establish the budget for the next year*." 28 C.F.R. 600.8(a)(2) (emphasis added).

23.    However, as of late fiscal 2021, "a Justice Department spokeswoman declined to say whether Mr. Garland has decided to allow Mr. Durham's probe to continue beyond September or approved a budget for the next fiscal year."  Aruna Viswanatha & Sadie Gurman, *Durham Probe of What Sparked Russia Investigation Examines FBI Tipsters*, WALL ST. J. (Aug 13, 2021).

24.    When asked during his confirmation hearing whether he would "commit to providing Special Counsel Durham with the staff, resources, funds, and time needed to thoroughly complete the investigation," Attorney General Garland declined to do so.  Jerry Dunleavy, *Merrick Garland Doesn't Promise to Protect Durham Investigation or Release Report*, WASH. EXAM'R

(Feb. 22, 2021), *available at* https://www.washingtonexaminer.com/news/grassley-garland-durham-investigation.

25.     As the most recent indictments in late 2021 and ongoing litigation reveal, *see supra* ¶¶ 19-20, it is vitally important that the public receive assurances on whether Special Counsel Durham's work will continue to be funded, not prematurely terminated.  Accordingly, Empower Oversight filed the FOIA Request described herein.

## JURISDICTION AND VENUE

26.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

27.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(b) and 28 U.S.C. § 1391(e)(1).

## PARTIES

28.      Plaintiff Empower Oversight is a nonprofit, nonpartisan educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing. Empower Oversight has its principal place of business located at 601 King Street, Suite 200, Alexandria, VA 22313-3151.  Empower Oversight works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, as well as work to hold authorities accountable to act on such reports.

29.     Defendant DOJ is a federal administrative agency within the meaning of 5 U.S.C. § 552(f)(1), with its principal place of business located at 950 Pennsylvania Avenue NW, Washington, DC, 20530.  Upon information and belief, the DOJ has possession, custody, and control of the records, within the meaning of 5 U.S.C. § 552(f)(2), to which Empower Oversight seeks access.

**LEGAL STANDARD**

30.     FOIA requires a federal administrative agency to promptly make available requested, non-exempt agency records in response to a request that (a) reasonably describes such records and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]" 5 U.S.C. § 552(a)(3)(A); *see also* 28 C.F.R. § 16.3(b).

31.     In making available such records, fees applicable to processing requests shall be limited to reasonable standard charges for document duplication when records are sought by a "representative of the news media," defined as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(ii); *see also* 28 C.F.R. § 16.10(b)(6). Otherwise, with other limited exceptions, the DOJ charges fees for processing (*i.e.*, document search and/or review) FOIA requests. 28 C.F.R. § 16.10(a).

32.     FOIA requires an agency to respond to a valid request within twenty (20) days (exempting Saturdays, Sundays, and legal public holidays) (hereinafter "working days") upon receipt of such request, including notifying the requestor immediately of its determination, the reasons therefor, and the right to appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A)(i); *see also* 28 C.F.R. § 16.5(c).

33.     In certain circumstances, an agency may instead provide notice to the requester that "unusual circumstances" merit additional time—up to an additional ten (10) working days—to respond to the request. 5 U.S.C. § 552(a)(4)(viii)(II)(aa); *see also* 28 C.F.R. § 16.5(c) (requiring DOJ to "notify the requester in writing of the unusual circumstances involved and of the date by which processing of the request can be expected to be completed"). In the event the agency provides notice to the requester of "unusual circumstances," and that it is not able to respond to

the records request within the statutory deadline, the agency must provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request." 5 U.S.C. § 552(a)(6)(B)(ii); *see also* 28 C.F.R. § 16.5(c).

34.    If an agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

<u>July 12, 2021 FOIA Request</u>

35.    On July 12, 2021, Empower Oversight sought all records relating to the following:

a.    The Justice Department's consideration and hiring of Ms. Hennessey, including all records related to her interest in joining the Department, consideration of her for any Department position, any statements of recommendation, evaluations of her qualifications, records relating to interviews with Ms. Hennessey, notes from any such interviews, and any offers of employment;

b.    All forms completed by Ms. Hennessey in the application, hiring, and onboarding processes at Department of Justice;

c.    All conflicts Ms. Hennessey reported or the Department assessed to apply to her;

d.    All recusals applicable to Ms. Hennessey, including all records relating to any recusal or draft recusal of Ms. Hennessey from matters related to Special Counsel Durham's inquiry;

e.    All records relating to Ms. Hennessey's deleted tweets;

f.    All records to or from the relevant Justice Department Ethics Officials, including Michael Nannes or Cynthia Shaw, regarding Ms. Hennessey;

g.    Ms. Hennessey's calendar entries from the first day of her employment at the Department to the present;

h.    All records sent or received by Ms. Hennessey that include the terms "Durham," "Special Counsel," "Steele," "dossier," "Clinesmith," or "Danchenko";

i.    All records relating to Ms. Hennessey's previous employer, Lawfare, and leaks regarding Special Counsel Mueller's investigation.

*See* Exhibit ("Ex.") A.

36.     In addition, Empower Oversight requested a waiver of search and duplication fees associated with the DOJ's processing of its FOIA request and expedited processing.  *See id*.

37.     By letter dated July 22, 2021, the DOJ acknowledged receipt of the July 12th FOIA request, designated the request as FOIA-2021-01701, denied the request for expedited processing, and postponed a decision on its request for a fee waiver pending a determination "whether fees will be implicated" by the same.  *See* Ex. B.  In addition, DOJ identified the analyst and FOIA liaison assigned to Empower Oversight's request, and noted the availability of mediation services offered by the National Archives and Records Administration ("NARA").  *See id*. at 2.

38.     In addition, the DOJ advised:

> To the extent that your request requires a search in another Office, consultations with other Department components or another agency, and/or involves a voluminous amount of material, your request falls within "unusual circumstances."  *See* 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018).  Accordingly, we will need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.  For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  At this time we have assigned your request to the complex track.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options.

*See id*. at 1-2.

<u>August 19, 2021 FOIA Request</u>

39.     On August 19, 2021, Empower Oversight sought all records relating to the following:

> a.  All records of communications from January 21, 2021 to the present between any personnel in the Special Counsel's Office and personnel in the Office of the Attorney General regarding the Special Counsel's budget for fiscal year 2022;

b.  All records of communications from January 21, 2021 to the present between any personnel in the Special Counsel's Office and personnel in the Office of the Deputy Attorney General regarding the Special Counsel's budget for fiscal year 2022;

c.  All records of communications from January 21, 2021 to the present among personnel within the Office of the Attorney General and the Office of the Deputy Attorney General regarding the Special Counsel's budget for fiscal year 2022.

*See* Ex. C.

40.    In addition, Empower Oversight requested a waiver of search and duplication fees associated with the DOJ's processing of its FOIA request and expedited processing. *See id*.

41.    By letters dated August 27, 2021 and September 2, 2021, the DOJ acknowledged receipt of Empower Oversight's August 19th FOIA request, designated its request as FOIA-2021-02003, denied Empower Oversight's request for expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(iv)(16.5(e)(1)(ii), and advised that consideration of the request under 28 C.F.R. § 16.5(e)(1)(iv) remained pending with the Director of Public Affairs. *See* Exs. D-E.  In addition, DOJ postponed a decision on its request for a fee waiver pending determination of "whether fees will be implicated," identified the analyst and FOIA liaison assigned to the request, and noted the availability of mediation services offered by the NARA. *See id*.

42.    In addition, the DOJ included the same apparent boilerplate language concerning "unusual circumstances," *see supra* ¶ 38:

> To the extent that your request requires a search in another Office, consultations with other Department components or another agency, and/or involves a voluminous amount of material, your request falls within "unusual circumstances."  *See* 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018).  Accordingly, we will need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.  For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  At this time we have assigned your request to the complex track.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also

agree to an alternative time frame for processing, should records be located, or you may
wish to await the completion of our records search to discuss either of these options.

*See* Ex. E at 1-2.

<u>Subsequent Correspondence with DOJ Regarding the Requests</u>

43.    On December 7, 2021, Empower Oversight sent a letter electronically to the
respective analyst and FOIA public liaison, inquiring about the status of both FOIA Requests.  A
copy of this letter is attached as Ex. F.  Specifically, Empower Oversight requested that DOJ advise
which unusual circumstances, if any, were applicable to the Requests, and why the DOJ did not
explicitly reference such circumstances in either its July 22, 2021 or August 27, 2021 letters.

44.    On December 14, 2021, the DOJ FOIA Liaison (the "Liaison") acknowledged
receipt by email of the December 7, 2021 letter and agreed to confer by telephone. In that same
email, DOJ requested clarification as to the final subpart of Empower Oversight's July 12, 2021
Request. *See supra* ¶ 35(i).

45.    On December 15, 2021, Empower Oversight and the Liaison spoke by telephone,
which the Liaison then memorialized in an email.  In the call, the Liaison explained that the DOJ's
Office of Information Policy ("OIP") does not serve as a document custodian for its client offices
and typically does not have access to their records.  In its email, the Liaison cited to the need to
search in offices for records as the reason for placing the Requests into the "unusual
circumstances" category.

46.    In its December 15, 2021 email, the Liaison offered that the Departmental
Executive Secretariat search for public records that may be responsive to Empower Oversight's
Request, and stated that if that option were agreed to, DOJ would then provide an "estimate on an
interim response."

47.     On January 20, 2021, Empower Oversight responded to the December 14, 2021 email, reiterating that the final subpart of its July 12, 2021 Request was sufficiently specific, but reiterating certain factual background to clarify its significance.

48.     On January 26, 2022, Empower Oversight accepted the offer to have the Departmental Executive Secretariat search for and produce any records concerning the August 19, 2021 Request and the DOJ's consideration thereof.

49.     Empower Oversight has received no further correspondence from the DOJ concerning its FOIA Requests, including an estimated date for an interim response, let alone a final determination.

50.     Empower Oversight has been forced to expend resources to prosecute this action as to both FOIA requests.

## CLAIMS FOR RELIEF

### Count I
### Failure to Comply with Statutory Deadlines in Violation of FOIA, 5 U.S.C. § 552(a)(6)

51.     Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-50, as if fully set forth herein.

52.     To date, Defendant has not provided a final determination as to either the July 12, 2021 or August 19, 2021 FOIA Requests.

53.     More than 20 working days have passed since each of the Requests was received by the DOJ. *See supra* ¶¶ 37, 41; *see also* Exs. B, D-E.

54.     FOIA requires the DOJ to have provided a final determination within 20 working days of each Request. The DOJ may extend this 20-day period in the event of "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), for a maximum of 10 working days, but must specify the unusual circumstances for such extension and the date on which a

determination is expected.  *See* 5 U.S.C. §§ 552(a)(4)(A)(viii)(II)(aa), 552(a)(6)(B)(i-ii); see also 28 C.F.R. § 16.5.

55.    As to both the July 12, 2021 and the August 19, 2021 Requests, the DOJ failed to provide a final determination within 20 working days of the Request.  *See* 5 U.S.C. § 552(a)(6).

56.    In addition, or in the alternative, the DOJ failed to definitively state whether unusual circumstances exist to extend that 20-day deadline.  Instead, DOJ responded with a boilerplate paragraph that "to the extent" either Request was deemed to satisfy certain criteria, the request would constitute "unusual circumstances."  *See supra* ¶¶ 38, 42.

57.    Even to the extent unusual circumstances did exist as DOJ appears stated for the first time on December 15, 2021, *supra* ¶ 45, DOJ failed to identify a discrete "unusual circumstance," in violation of FOIA. 5 U.S.C. § 552(a)(4)(viii)(II)(aa); *see also* 28 C.F.R. § 16.5(c).

58.    In addition, DOJ failed to identify a date by which it expected to render a determination in the event of such unusual circumstances, also in violation of FOIA.  5 U.S.C. § 552(a)(4)(viii)(II)(aa); *see also* 28 C.F.R. § 16.5(c).  Instead, in apparent reference to the 10-day "unusual circumstances" provision, DOJ stated in both its initial response letters, almost half a year ago: "[W]e will need to extend the time limit to respond to your request beyond the ten additional days provided by the statute." *See* Ex. B, Exs. D-E.  In other words, DOJ fully acknowledged that it would defy the statutory deadlines, yet neither provided a rationale (identification of the unusual circumstance), nor a projected date for its final determination.

59.    As far more than 30 working days have passed since receiving the July 12, 2021 and August 19, 2021 requests (and notably, even more than 20 working days have passed since Empower Oversight agreed to the Executive Secretariat search that would yield an "estimate of an

interim response," *see supra* ¶¶ 46-47), even the statutory extension for "unusual circumstances" has long since passed.  Therefore, even "to the extent" each Request could have legitimately constituted "unusual circumstances," DOJ failed to comply with the statutory deadline.

60.    DOJ has thus failed to timely make the statutorily required determination on Empower Oversight's July 12, 2021 and August 19, 2021 Requests, in violation of FOIA.  *See* 5 U.S.C. § 552(a)(6).

61.    Empower Oversight has constructively exhausted all administrative remedies required by FOIA as to each Request.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

62.    Empower Oversight is entitled to declaratory and injunctive relief in connection with the DOJ's unlawful failure to make a determination as to each Request. *See* 5 U.S.C. § 552(a)(6).

**Count II**
**Unlawful Withholding of Agency Records in Violation of FOIA, 5 U.S.C. § 552(a)(3)**

63.    Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-62, as if fully set forth herein.

64.    FOIA requires Defendant to process records requests and promptly provide the requested records or the reasonably segregable portion of records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3)(B).

65.    However, the DOJ has neither provided Empower Oversight any responsive documents in response to either the July 12, 2021 or the August 19, 2021 Request, nor has it claimed that any responsive records are exempt from disclosure.

66.    Empower Oversight is entitled to declaratory and injunctive relief in connection with the DOJ's unlawful failure to timely produce responsive records as to the Six Requests.  5 U.S.C. § 552(a)(3)(B).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that this Court:

A.   Declare that the DOJ failed to make timely determinations on each of Empower Oversight's July 12, 2021 and August 19, 2021 Requests, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

B.   Declare that the DOJ failed to promptly provide records responsive to each of Empower Oversight's July 12, 2021 and August 19, 2021 Requests, in violation of FOIA, 5 U.S.C. § 552(a)(3);

C.   Order the DOJ to immediately conduct a reasonable search for all records responsive to each of Empower Oversight's July 12, 2021 and August 19, 2021 Requests, as required by FOIA, 5 U.S.C. § 552(a)(3)(C);

D.   Order the DOJ to immediately provide determinations on each of Empower Oversight's July 12, 2021 and August 19, 2021 Requests, as required by FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

E.   Order the DOJ to promptly disclose to Empower Oversight all responsive, non-exempt records for the July 12, 2021 and August 19, 2021 Requests, as required by FOIA, 5 U.S.C. § 552(a)(3);

F.   Award Empower Oversight its costs and reasonable attorneys' fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

G.   Grant such other relief as the Court may deem just and proper.

February 22, 2022                          Respectfully submitted,


                                           */s/ Michael J. Schrier*
                                           Michael J. Schrier (VSB #65916)
                                           HUSCH BLACKWELL LLP
                                           750 17th Street, NW, Suite 900
                                           Washington, DC 20006-4675
                                           Tel. 202-378-2313
                                           Fax 202-378-2319
                                           michael.schrier@huschblackwell.com

                                           Scott L. Glabe
                                           HUSCH BLACKWELL LLP
                                           750 17th Street, NW, Suite 900
                                           Washington, DC 20006-4675
                                           Tel. 202-378-2396
                                           Fax 292-378-2319
                                           scott.glabe@huschblackwell.com

                                           *Attorneys for Plaintiff Empower Oversight*
                                           *Whistleblowers & Research*